# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

---

SPENCER B. DURHAM,

                                Petitioner,

      v.                                  9:18-CV-739
                                          (BKS/ATB)

LISA MENARD, et al.,

                                Respondents.

---

SPENCER B. DURHAM, Petitioner pro se
BENJAMIN D. BATTLES, Solicitor Gen. Vermont for Respondent Menard
PAUL B. LYONS, Asst. Attorney General for Respondent NY Atty General

ANDREW T. BAXTER, United States Magistrate Judge

## REPORT-RECOMMENDATION

    This matter has been referred to me for Report and Recommendation, pursuant to 28 U.S.C. § 636(b) and Local Rules N.D.N.Y. 72.3(c).

## I.    <u>Background</u>

    Petitioner seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging a judgment of conviction rendered in the Washington County Court on September 12, 2014. (Petition ("Pet,") ¶ 1).  Petitioner was convicted after a jury trial of two counts of Grand Larceny, Third Degree; one court of a Scheme to Defraud, First Degree; and two counts of Issuing a Bad Check, upon which he was sentenced, as a persistent felony offender, to 20 years to life imprisonment. (*Id.*)  The Appellate Division, Third Department affirmed petitioner's conviction on July 25, 2017, and the New York Court of Appeals denied leave to appeal. *People v. Durham*, 148 A.D.3d 1293 (3d Dep't), *lv. denied*, 29 N.Y.3d 1091 (2017).  At the time that petitioner filed this application, he was incarcerated in the State of Vermont, serving a sentence for

conviction on crimes unrelated to this action.

## II.    **Grounds Asserted in the Habeas Corpus Petition**

Petitioner raises the following grounds for relief:

(1)    Petitioner was denied the right to be present at all material stages of the proceedings when the trial judge held an ex parte conference with defense counsel outside of the petitioner's presence in violation of his Sixth Amendment right to counsel and his Fifth Amendment right to due process. (Pet. ¶ 12 Ground One).

(2)    Petitioner was denied his right to compulsory process when the trial judge refused to grant him a 45-day adjournment of the trial in order to locate witnesses whose testimony would be "relevant and material" to his case. (Pet. ¶ 12 Ground Two).

(3)    Petitioner was denied his constitutional right to a speedy trial under the Sixth and Fourteenth Amendments. (Pet. ¶ 12 Ground Three).

Vermont respondent Menard[1] has filed an affidavit, together with records relevant to the Vermont proceedings. (Dkt. Nos. 24, 25).  The New York respondent has filed an answer, together with a memorandum of law and the relevant state court records. (Dkt. Nos. 21-23).

## II.    **EXHAUSTION/PROCEDURAL DEFAULT**

### A.    **Legal Standards**

#### 1.    **Exhaustion**

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust

---

[1] Petitioner is challenging only his New York State conviction.  However, because he was in custody in Vermont at the time that this petition was filed, petitioner's custodian in Vermont was served with the petition.  In filing her answer, respondent Menard does not concede that she is the proper respondent in this action or that this court has in personam jurisdiction over her.  This court need not consider either issue because the New York State Attorney General is the proper respondent when petitioner challenges his "future" custody, and the New York State Attorney General has submitted all the relevant papers for the court to consider the petitioner's grounds for relief.

available state remedies, . . . thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (internal quotation and other citations omitted)); 28 U.S.C. § 2254(b)(1). *See Davila v. Davis*, __ U.S. __, 137 S. Ct. 2058, 2064 (2017) ("The exhaustion requirement is designed to avoid the 'unseemly' result of a federal court 'upset[ting] a state court conviction without' first according the state courts an "opportunity to . . . correct a constitutional violation.'") (quoting *Rose v. Lundy*, 455 U.S. 509, 518 (1982) (internal quotation marks omitted)). The prisoner must "fairly present" his claim in each appropriate state court, including the highest court with powers of discretionary review, thereby alerting that court to the federal nature of the claim. *Baldwin, supra*; *Bossett v. Walker*, 41 F.3d 825, 828 (2d Cir. 1994).

"A habeas petitioner has a number of ways to fairly present a claim in state court without citing 'chapter and verse' of the Constitution, including '(a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.'" *Hernandez v. Conway*, 485 F. Supp. 2d 266, 273 (W.D.N.Y. 2007) (quoting *Daye v. Attorney General*, 696 F.2d 186, 194 (2d Cir.1982)).

## 2. Procedural Default

A federal judge may not issue a writ of habeas corpus if an adequate and independent state-law ground justifies the prisoner's detention, regardless of the federal

claim. *See Davila*, 137 S. Ct. at 2064-65; *Wainwright v. Sykes*, 433 U.S. 72, 81-85 (1977). A federal habeas court generally will not consider a federal issue if the last state court decision to address the issue "'rests on a state law ground that is independent of the federal question and adequate to support the judgment.'" *Garvey v. Duncan*, 485 F.3d 709, 713 (2d Cir. 2007) (quoting *Lee v. Kemna*, 534 U.S. 362, 375 (2002)) (emphasis added). This rule applies whether the independent state law ground is substantive or procedural. *Id*.

In addition, if the court finds that petitioner has failed to exhaust his claims, but he cannot return to state court, petitioner's claims would then be "deemed" exhausted, but would be barred by procedural default. *Bossett v. Walker*, 41 F.3d 825, 828-29 (2d Cir. 1994). A state prisoner who has procedurally defaulted on a federal claim in state court may only obtain federal habeas review of that claim if he can show both cause for the default and actual prejudice resulting from the alleged violation of federal law, or if he can show that the constitutional violation has resulted in the conviction of one who is "actually innocent." *Rivas v. Fischer*, 687 F.3d 514, 540 (2d Cir. 2012); *Clark v. Perez*, 510 F.3d 382, 393 (2d Cir. 2008) (internal quotation and citations omitted). The actual innocence prong is referred to as the fundamental miscarriage of justice exception. *Rivas, supra*. "Cause" exists if "the prisoner can show that some objective factor external to the defense impeded counsel's effort to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Prejudice exists if there is a "reasonable probability" that the result of the proceeding would have been different absent the alleged constitutional violation. *Stickler v. Greene*, 527 U.S. 263, 289 (1999).

### B.    Application

### 1.    Right-to-be-Present

Respondent argues that petitioner has failed to exhaust this ground, and because petitioner has no avenue in New York State court to raise the claim, it is now barred by procedural default.  Respondent also argues that the claim is meritless.  Petitioner claims that on the fourth day of trial, his attorney made a motion to withdraw in an ex parte appearance before the trial judge.  Petitioner alleges that he was never told of this motion, and he was not allowed to be present during his attorney's meeting with the court.  In his federal petition, he now argues that he was denied his right to be present, but he also argues that this conversation with the judge created a conflict of interest between petitioner and his attorney.  Petitioner claims that, based on this "conflict," his attorney was not able to provide effective assistance. (Pet.'s Mem. at 1-8).

To the extent that plaintiff is now raising claims of ineffective assistance of counsel[2] or conflict of interest, he never properly raised such claims in state court proceedings.  In his direct appeal, petitioner's assigned counsel did not raise the right-to-be-present issue. (SR at 712).  Petitioner first submitted a pro se supplemental brief that he failed to send to the court. (SR 1449-50 (Affidavit of Service)).  In that pro se supplemental brief, when referring to his counsel's ex parte motion to withdraw, petitioner only relied upon his right to be present.  There was no discussion of conflict of interest or counsel's performance generally. (SR at 1451-64, 1459-60 ("Court Erred

---

[2] Petitioner now states that counsel moved to withdraw, not because of a threat by petitioner, but because counsel made some "grave" error on the day before his motion.  Petitioner never states what that "grave" error may have been, and it is clear from the conversation with the court that counsel was effectively representing petitioner in the eyes of the court.

in Conducting Ex Parte Colloquy Requested by Defense Counsel . . . .")).   Petitioner then filed a "Corrected Pro Se Supplemental Brief," which was sent to, and received by, the Appellate Division. (SR at 1465-80).   The "corrected" version listed the right-to-be-present claim as "Point 3" in the "Questions Presented" section of the document (SR at 1470), cited one state court case upon which he was relying for that claim in the "Table of Authorities" (SR at 1467),[3] but left out the relevant argument from his original brief completely.   His "corrected" brief goes from Point 2 to Point 4. (SR at 1473-74).

The prosecution did not address the issue of the ex parte colloquy or any counsel issue in its brief to the Appellate Division. (SR at 1481-1515).   Petitioner's counsel did not include any part of the argument in her reply brief (SR at 1822-53), and petitioner did not include any part of the argument in his pro se reply brief. (SR at 1854-77).   The Appellate Division considered only the right-to-be-present argument stating that

> although defendant indicates in his pro se brief that one of the questions presented on this appeal is whether County Court erred in conducting an ex parte colloquy with his trial counsel outside of his presence, he failed to articulate any argument whatsoever regarding the merits of this issue in his brief. To the extent that defendant included a citation to *People v. Moya* (138 AD3d 620 [2016]) in his table of authorities, and counsel cited it during oral argument in an effort to raise this issue, we find that *Moya* does not support defendant's position inasmuch as, here, the subject matter of the ex parte communication 'implicated no potential for meaningful input from . . . defendant' (*id.* at 621 . . . *see generally People v. Fabricio*, 3 NY3d 402, 406 [2004]).

*People v. Durham*, 138 A.D.3d at 1296.   It appears clear that the Appellate Division

---

[3] Petitioner cited *People v. Moya*, 138 A.D.3d 620 (1st Dep't 2016) in his Table of Authorities, but unlike the other cases that he cited in this table, *Moya* did not have a corresponding page to his brief listed.  Petitioner appears to have knowingly omitted the argument from his "corrected" brief.

saw only the petitioner's "corrected" brief which contained only the point heading and the citation to *Moya* in the table of authorities, and never received or considered petitioner's original brief, even though the original brief was served on the prosecutor. It also is clear from the Appellate Division's decision that petitioner's counsel mentioned *Moya* during oral argument in an effort to raise the right-to-be-present issue for petitioner, but the Appellate Division found that *Moya* did not apply.[4]  Thus, at most, the Appellate Division was presented only with petitioner's argument that he should have been present at his counsel's motion to withdraw.

In petitioner's counseled request for leave to appeal to the New York Court of appeals, he raised, inter alia, the issue of trial counsel's "ex parte colloquy" with the trial judge. (SR at 1883).  Counsel cited both *Moya* and *Fabricio*, arguing that petitioner might have had something "valuable to contribute," and that the statements attributed to the petitioner were "tantamount to threats," and "it may have deprived defendant of effective counsel who had his best interests at heart. (*Id.*)  The New York Court of Appeals denied leave to appeal on July 25, 2017). (SR at 1887).  In a letter, dated August 4, 2017, the New York Court of Appeals acknowledged receiving

---

[4] In *Moya*, the court held an ex parte discussion with defense counsel during the first afternoon of the trial. (138 A.D.3d at 620).  Counsel told the court that the believed that Moya was trying to "set him up" for an ineffective assistance of counsel claim and read the court a letter that he received from Moya. *Id.*  The court agreed with the defendant that the proceeding was an "'ancillary proceeding [] [at which] he . . . may have had something meaningful to contribute.'" *Id.* (alterations in original).  During the ex parte colloquy, Moya's counsel read a letter from the defendant in which he stated that there was no doubt where counsel's interest lies, and that he hoped that counsel and the judge "can continue a fine relationship." *Id.*  There was also a question whether Moya's counsel had revealed confidential information, which may have been contained in the letter that counsel read to the judge.  The Appellate Division found that Moya's exclusion from the hearing was error, and that the proceeding also implicated the court's obligation to make a "minimal inquiry" into whether the facts justified substitution of counsel. *Id.*  In this case, the Appellate Division distinguished Moya.

additional documents from pro se petitioner and indicated that although leave had already been denied, the court would accept the documents as a request for reargument. (SR at 1892). Petitioner then submitted his "Pro Se Application to Reargue Leave . . . ." (SR. at 1895-97). In this document, petitioner cited *Moya*, but also stated that the "defendant was deprived of effective assistance of counsel." (SR at 1897). On October 19, 2017, the New York Court of Appeals denied petitioner's motion for reconsideration. (SR at 1924).

Counsel's and the petitioner's fleeting reference to ineffective assistance of counsel, with no argument added, was not sufficient to raise an ineffective assistance claim. *Cornell v. Kirkpatrick*, 665 F.3d 369, 376 (2d Cir. 2011) (the mere mention of ineffective assistance of counsel, without more, is insufficient to alert the New York court to the possible federal basis of the claim). In addition, raising a claim for the first time in the New York Court of Appeals is insufficient to exhaust such a claim. *Castille v. Peoples*, 489 U.S. 346 (1989) (presentation of a new federal claim to a state's highest court on petition for discretionary review does not constitute a fair presentation of the issue to the state courts unless the state court "actually passed upon the claim"). The New York Court of Appeals denied leave to appeal, thus, it did not "pass" on any of the petitioner's claims. Thus, to the extent that petitioner now is attempting to raise an ineffective assistance of counsel claim, whether he claims "conflict of interest" or another reason that his attorney was ineffective, such a claim is unexhausted. *See also Lurie v. Wittner*, 228 F.3d 113, 124 (2d Cir. 2000) (same).

Petitioner now has no avenue to raise an ineffective assistance of counsel or "conflict of interest" claim in New York State Court. Any such claim was clearly on

the record and should have been raised on direct appeal. Thus, to the extent that

petitioner is bringing such a claim, it is "deemed" exhausted, but is subject to dismissal

based on a procedural default. *See* N.Y. Crim. Proc. Law § 440.10(2)(c) ("[A] New

York court must deny a § 440.10 motion where the movant unjustifiably failed to raise

the constitutional violation on direct appeal despite a sufficient record to have

permitted such an appeal."). Petitioner has stated no cause or prejudice for his failure

to include this potential claim in his "right-to-be-present" claim, and there is no

showing of actual innocence. Thus, any claim that counsel had a "conflict of interest"

and thus could not effectively represent petitioner must be dismissed.

With respect whether the right-to-be-present claim satisfied the *Daye* factors,

neither petitioner, nor his attorney in any of their documents, cited the federal

Constitution or federal law in conjunction with their argument. Instead, they relied

principally upon *Moya*, a New York case which relied upon New York law. The

prosecutor did not address the issue at all, and the Appellate Division addressed the

issue, noting that the petitioner did not include any substantive argument. Thus, the

only way that this issue would be considered "exhausted" is if the issue was one that

either was asserted in terms so particular as to call to mind a specific right protected by

the Constitution or was "well within the mainstream of constitutional litigation." In

this analysis, the critical question is whether the legal doctrines asserted in the state and

federal courts are substantially the same, such that the state court would have been on

notice of the constitutional nature of the claim, even if it was argued primarily on state

law grounds. *Murdock v. Sposato*, No. 14-CV-2931, 2016 WL 5173256, at *4

(E.D.N.Y. Sept. 21, 2016) (citing *Smith v. Duncan*, 411 F.3d 340, 349-50 (2d Cir.

2005); *Daye*, 696 F.2d at 192).

Although this presents a close question, it is a well-settled principle of constitutional law that a criminal defendant has the right "to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings." *Cohen v. Senkowski*, 290 F.3d 485, 489 (2d Cir. 2002) (quoting *Faretta v. California*, 422 U.S. 806, 819 n. 15 (1975) and citing *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987)).  It has also been held that "[o]ne of the most basic of the rights guaranteed by the Confrontation Clause is the accused's right to be present in the courtroom at every stage of his trial." *Curtis v. Fischer*, 387 F. Supp. 2d 218, 224–25 (W.D.N.Y. 2005) (quoting *Illinois v. Allen,* 397 U.S. 337, 338 (1970) (citing *Lewis v. United States*, 146 U.S. 370 (1892)).

As stated above, petitioner omitted his "argument" from the only pro se brief that was filed with the Appellate Division, and petitioner's appellate counsel cited only *Moya* during the oral argument in an effort to raise the issue for petitioner.  However, while *Moya* did not discuss federal constitutional principles, the Appellate Division also cited *People v. Fabricio, supra* in determining that petitioner's poorly-raised claim had no merit, and *Fabricio* was also cited in counsel's request fo leave to appeal to the New York Court of Appeals. (SR at 1883).

*Fabricio* involved a defendant's challenge to his exclusion from a sidebar conference. The defendant in *Fabricio* cited New York State Law (N.Y. Crim. Proc. Law  § 260.20), the New York State Constitution, and the Sixth Amendment of the United States Constitution. 3 N.Y.3d at 405.  Although the Appellate Division was not clear on the basis for its determination, it must have found that neither New York, nor

federal law, was violated as a result of his exclusion from the conference based on its citation to both *Moya* and *Fabricio*. Thus, the Appellate Division in this case was given the opportunity to, and must have considered, federal constitutional standards. Petitioner's counsel attempted to distinguish *Fabricio* in her application for leave to appeal to the New York Court of Appeals. (SR at 1883). Based upon the fact that the right to be present at all material stages of the prosecution is such a well-established and "most basic" right, I find that the petitioner sufficiently exhausted his state court remedies as to this issue. The court will consider the merits under the AEDPA standard below only with respect to the right to be present.

### 2. Compulsory Process

Petitioner claims that the trial court improperly denied his attorney a 45-day continuance in order to locate witnesses. Petitioner raised this claim in his brief to the Appellate Division. (SR at 749-52). However, counsel omitted this argument completely from her request for leave to appeal to the New York Court of Appeals. (SR at 1882-85). In her letter, counsel raised only two issues: speedy trial and the right to be present. (*Id.*) However, in her letter to the Court of Appeals, counsel also stated that the petitioner had been provided with a copy of the letter, and that he had been "very active throughout this appeal, and it is expected that he will raise some additional arguments in support of this application for leave." (SR at 1885).

Respondent argues that the claim is not exhausted because counsel omitted the claim from her letter-request, and that although petitioner moved for "reargument," he did not "mention" the continuance claim. (Resp.'s Mem. of Law at 26 n.6) (citing SR 1893-1922). Respondent further argues that, even if petitioner had mentioned the

continuance claim, it would have had no effect because "a claim is not exhausted if it is raised for the first time in a motion for reargument." (*Id.*) (citing inter alia *Slater v. Conway*, No. 11-CV-47, 2012 WL 777481, at *6-7 (W.D.N.Y. Mar. 7, 2012)).

While respondent's statement of the law is correct, this court cannot agree that petitioner failed to exhaust his "continuance" claim.  As stated above, petitioner's counsel informed the New York Court of Appeals that petitioner was likely to file a pro se supplemental application as he had done in the Appellate Division. (SR at 1885). Defense counsel's letter was dated April 20, 2017. (SR at 1882).  On July 31, 2017, petitioner wrote his "Notice of Motion" to file a supplemental pro se application to the New York Court of Appeals.  Petitioner argued that due to his move from Michigan to Pennsylvania,[5] he had been unable to submit his application sooner. (SR at 1888-90). When the court received his documents, petitioner was told by letter dated August 4, 2017, that the court had denied leave to appeal on July 25, 2017, but was instructed that if he wished his papers to be considered a request for "reconsideration" of the court's order, "please advise." (SR at 1892).  Petitioner submitted his pro se papers approximately one month later on September 8, 2017. (SR at 1894) (certificate of service).

The court would also point out that, contrary to respondent's argument, petitioner's motion papers did "mention" the continuance argument.  In fact, the motion papers contained substantial argument on the issue, even if petitioner was simply submitting documents that had already been filed in his case. (SR at 1898-1903).  These

---

[5] Although petitioner was in Vermont custody, apparently the Department of Corrections in Vermont contracted with other states to house their inmates. (SR at 1889).

papers were the materials that petitioner's trial attorney submitted to the trial judge,

specifically raising a federal constitutional basis for the claim and citing a state court

case, which in turn cited *Chambers v. Mississippi*, 410 U.S. 284 (1973) for the

proposition that "'few rights are more fundamental than that of a defendant to present

witnesses in his own defense.'" (SR at 1899). Petitioner also included portions of his

brief to the Appellate Division which clearly raised the constitutional issue. (SR at

1904-1907). Petitioner "cut and pasted" these documents to a document that was

entitled "Reasons for Granting Leave to Appeal." (SR at 1896).

If petitioner had submitted his document a week or so earlier, petitioner would

have simply been submitting a pro se supplemental application to which his appellate

attorney had alerted the court. When he submitted his letter, which was only one week

after the court denied leave to appeal, a court representative told petitioner to submit his

documents if he wished "reconsideration." Petitioner filed the appropriate documents

approximately one month later. Petitioner should not be penalized for attempting to

comply with the Court of Appeals direction. He clearly gave the court the opportunity

to consider his constitutional claim, and should not be treated as if he were making a

simple motion to "reargue." Thus, in this unusual circumstance, this court finds that

petitioner sufficiently exhausted his claim that the trial court improperly denied his

attorney a continuance to obtain witnesses, and the court will consider the merits of the

issue below.

### 3. Speedy Trial

The court agrees with respondent that petitioner failed to exhaust his speedy trial

claim. Petitioner's claim is now, and has always been, that the prosecutor violated the

petitioner's statutory right to a speedy trial under New York law, specifically N.Y. Crim. Proc. Law § 30.30.  Section 30.30 addresses how much time may elapse between the commencement of a criminal action and when the case is trial ready.  The statute provides that the indictment may be dismissed if the prosecution is not ready for trial after six months from the commencement of the criminal action. N.Y. Crim. Proc. Law § 30.30.  When calculating the six months, time is excluded for a number of reasons. *Id.* However, "[t]his provision is purely a creature of New York state statute and does not protect a federal constitutional right." *Parish v. Lee*, No. 10-CV-8708, 2015 WL 7302762, at *11-12 (S.D.N.Y. Nov. 8, 2015) (citing inter alia *Gibriano v. Attorney Gen.*, 965 F. Supp. 489, 492 (S.D.N.Y. 1997) ("Section 30.30 is a statutory time frame in which the People of the State of New York must be ready for trial." (internal quotation marks omitted)).

The Appellate Division began its consideration of the petitioner's speedy trial argument by stating that "[d]efendant contends that he was deprived of his ***statutory*** right to a speedy trial because the People were not ready for trial within six months of the filing of the felony complaint due to his detainment in Vermont for more than a year." 148 A.D.3d at 1294 (emphasis added).  The petitioner's application for leave to appeal to the New York Court of Appeals clearly focused on the 180 day period contained in section 30.30, arguing that the prosecutor violated the time limits. Petitioner's attorney also noted that the prosecutor could have utilized the Interstate Agreement on Detainers to bring petitioner back to New York for prosecution. (SR at 1884-85) (citing N.Y. Crim. Proc. Law § 580.20).  Essentially, counsel's argument was that the prosecutor had exceeded the 180 day time limit by approximately 15 days. (*Id.*)

The court in *Parish* held that it was well-settled that by raising only a section 30.30 claim, a petitioner does not exhaust a federal speedy trial claim. 2015 WL 7302762, at *12 (citations omitted).

In *Parish*, the court distinguished between a purely statutory argument and an argument which actually cited the Sixth Amendment of the United States Constitution or even an argument under N.Y. Crim. Proc. Law § 30.20 which "embod[ies] the federal constitutional right to a speedy trial[.]" *Id.* at *12, 15 (citing *Gibriano*, 965 F. Supp. at 492 (internal quotation marks omitted); *Smith v. Maher*, 468 F. Supp. 2d 466, 473 (W.D.N.Y. 2006) (same); *People v. Anderson*, 488 N.E.2d 1231, 1234 (N.Y. 1985) (same); *Phillips v. Warden, Clinton Corr. Facility*, No. 08-CV-1887, 2010 WL 1189381, at *7 n.5 (E.D.N.Y. Mar. 29, 2010) ("[T]he state speedy trial right under § 30.30 is distinct from the federal constitutional speedy trial right and involves a different factual and legal analysis. For this reason, when [the] petitioner raised his statutory speedy trial claim at the appellate level, he did not present a federal claim to those courts.")). Petitioner in this case did not utilize any of the ways cited in *Daye* to exhaust his speedy trial claim. In the prosecutor's brief to the Appellate Division, counsel specifically stated that the issue was statutory only and argued only that certain time was "excludable" from the statute. (SR at 58-60). Therefore, petitioner's Speedy Trial claim is unexhausted.

Petitioner may not return to New York State court to exhaust a constitutional speedy trial claim. Such a claim was clearly record-based and belonged in his direct appeal to the Appellate Division and in his leave to appeal to the New York Court of Appeals. Petitioner cannot again seek leave to appeal to the New York Court of

Appeals because New York law permits only one such application, and petitioner was already given a second chance to have the court "reconsider" its denial of leave. See N.Y. Ct. R. § 500.20(a)(2) (indicating that "only one application" for leave to appeal a criminal conviction "is available"). If petitioner attempted to return to the trial court with a constitutional speedy trial claim, it would be dismissed for failure to raise it on appeal. *See* N.Y. Crim. Proc. Law § 440.10(2)(c). Thus, petitioner's Speedy Trial claim may be "deemed" exhausted, but is subject to dismissal for procedural default.

Petitioner has not established either cause for the default, nor has he established "prejudice" from any alleged constitutional violation. Even assuming that the prosecution was 15 days late (the Appellate Division found otherwise) for purposes of section 30.30, it would not have affected the fairness of the trial, nor would such a "violation" have resulted in the conviction of one who was "actually innocent" of the crime. Thus, petitioner's Speedy Trial claim may be dismissed. The court will proceed to discuss the merits of the remaining two exhausted claims.

## III. **Merits**

### A. **The AEDPA**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that, when a state court has adjudicated the merits of a petitioner's claim, a federal court may grant an application for a writ of habeas corpus only if "the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court

16

proceeding." 28 U.S.C. § 2254(d). *See also, e.g.*, *Noble v. Kelly*, 246 F.3d 93, 98 (2d Cir. 2001); *Brown v. Alexander*, 543 F.3d 94, 100 (2d Cir. 2008). This is a "difficult to meet," and "highly deferential standard for evaluating state-court rulings, which demands that state court decisions be given the benefit of the doubt." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (citations omitted).

A state-court decision is "contrary to" clearly established federal law if the state court's conclusion on a question of law is "opposite" to that of the Supreme Court or if the state court decides a case differently than the Supreme Court's decision "on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A state court decision involves an unreasonable application of clearly established Supreme Court precedent if it correctly identifies the governing legal principle, but unreasonably applies or unreasonably refuses to extend that principle to the facts of a particular case. *Id*.

Under the AEDPA, a summary disposition by a state court constitutes a disposition "on the merits." *Harrington v. Richter*, 562 U.S. 86, 98-99 (2011); *see also Davis v. Greiner*, 428 F.3d 81, 88 (2d Cir. 2005) (noting that where state courts summarily deny relief on the merits, "we must focus on the ultimate decisions of those courts, rather than on the courts' reasoning"). A federal court reviewing a Section 2254 claim must determine "what arguments or theories supported or . . . could have supported the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Harrington v. Richter*, 562 U.S. at 102.

17

A state court's factual findings are presumed correct under the AEDPA, unless that presumption is rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Rice v. Collins*, 546 U.S. 333, 338-39 (2006). If the state court failed to decide a claim "on the merits," the pre-AEDPA standard of review applies, and both questions of law and mixed questions of law and fact are reviewed *de novo*. *Washington v. Shriver*, 255 F.3d 45, 55 (2d Cir. 2001).

### B. Right-to-be-Present

#### 1. Legal Standards

As stated above, it is a well-settled principle of constitutional law that a criminal defendant has the right "to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings." *Cohen v. Senkowski*, 290 F.3d 485, 489 (2d Cir. 2002) (quoting *Faretta v. California*, 422 U.S. 806, 819 n. 15 (1975) and citing *Kentucky v. Stincer*, 482 U.S. 730, 745 (1987)). "The constitutional right to presence is 'rooted to a large extent in the Confrontation Clause of the Sixth Amendment,' and thus clearly encompasses situations in which a criminal defendant is confronting witnesses or evidence against him." *Fox v. Martuscello*, No. 16-CV-5416, 2019 WL 4805527, at *6 (E.D.N.Y. Sept. 30, 2019) (quoting *United States v. Gagnon*, 470 U.S. 522, 526 (1985)). The Supreme Court has held that the right to be present also extends to "'some situations where the defendant is not actually confronting witnesses or evidence against him,' so long as his presence 'has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge.'" *Id.* (quoting *Snyder v. Commonwealth of Massachusetts*, 291 U.S. 97, 107–08 (1934), *overruled in part on other grounds by Malloy v. Hogan*, 378 U.S. 1 (1964); citing inter alia *Faretta v. California*, 422 U.S.

18

806, 819 n.15 (1975) ("[A defendant has] a right to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings.")).

The Appellate Division decided this issue on the merits, holding that *People v. Moya* did not support petitioner's argument, and that "the subject matter of the ex parte communication 'implicated no potential for meaningful input from . . . defendant'" *People v. Durham*, 138 A.D.3d at 1296 (citing *Moya, supra*; *Fabricio*, *supra*). Therefore, the AEDPA standard applies. This court finds that the Appellate Division's decision was not contrary to any well-established Supreme Court precedent. The ex parte communication was not about the trial or the evidence. Thus, counsel's meeting with the court did not implicate either witnesses or evidence. Petitioner's attorney was making a motion to withdraw because he claimed petitioner had threatened him, and he was afraid of the petitioner. Although petitioner claims that counsel somehow revealed information that was subject to the attorney-client privilege, petitioner points to no such information. The attorney client privilege is triggered when the client communicates with counsel for the purpose of seeking legal advice. Making threats against one's attorney does not qualify as "privileged" communication. *See e.g. Brennan Center for Justice at New York University School of Law v. U.S. Dep't of Justice*, 697 F.3d 184, 207 (2d Cir.2012) ("The attorney-client privilege protects communications (1) between a client and his or her attorney (2) that are intended to be, and in fact were, kept confidential (3) for the purpose of obtaining or providing legal assistance.") Petitioner also claims that counsel disparaged him in front of the judge, and he had to ability to respond to counsel's accusations. However, this would not have affected the "fairness" of the trial, and the Appellate Division did not act contrary to Supreme Court precedent

19

when it decided that the petitioner would have had no "meaningful" input in the conference.

Although petitioner claimed that his attorney's statement that he could no longer "effectively" represent the petitioner was critical, as stated above, petitioner never supported his argument or made a separate ineffective assistance of counsel claim.[6]  In addition, the trial judge emphasized, during the ex parte colloquy with counsel, that counsel was "doing a very good job," "making good arguments," "explaining things very lucidly," and "representing petitioner "very zealously."[7] (Trial Transcript ("T") at 536, 542-43) (Dkt. No. 23-9).  Petitioner's absence during this conference did not affect the fairness of the proceedings.  Petitioner's case was a jury trial, and the judge was quite clear that he was aware that the petitioner was a "difficult client," who had "intimidated other lawyers in the past." (T. 532).  The petitioner's trial counsel was his fourth attorney in the case (T. 530), and the judge was concerned that the petitioner was attempting to manipulate the court into appointing him yet another attorney.[8] (T. 530,

---

[6] Petitioner did not ask that counsel be removed.  Counsel moved to withdraw after petitioner's threat.

[7] The court also notes that, prior to allowing the ex parte colloqy, the trial judge specifically stated that if the colloquy concerned "any kind of a substantive matter about the guilt or innocence, or the proof or evidence, or something involved in the case that wouldn't be a proper subject    if I get the feeling that is what we are talking about, I wouldn't be able to discuss it any further." (T. at 527).  Thus, it is clear that the trial court was aware that any ex parte conversation with counsel had limits that would not be crossed.  Counsel assured the court that "[i]t is nothing to do with any evidence.  Nothing to do with any of that." (T. at 528).

[8] The judge specifically stated that petitioner "had many attorneys in the past.  Most of which refuse to represent him any more.  That is how we happened to wind up with Mr. Gregor and asked him to represent him." (T. 530).  It is highly unlikely that anything that petitioner's counsel said during the ex parte conversation affected the trial court's view of the petitioner.  In fact, before counsel even began to speak during the ex parte proceeding, the trial judge asked: "Did he threaten you?" (T. 530).  However, the court also assured counsel that although petitioner had "intimidated" other attorneys in the past, and he had an extensive prior record, "he has never done anything violent." (T. 531-32).  The

532).  Thus, this court finds that the Appellate Division's decision was not contrary to

well-established Supreme Court precedent, and petitioner's right-to-be-present claim

may be dismissed.

### C.    Compulsory Process/Continuance

#### 1.    Legal Standards

The right to call witnesses in order to present a meaningful defense at a criminal

trial is "'a fundamental constitutional right secured by both the Compulsory Process

Clause of the Sixth Amendment and the Due Process Clause of the Fourteenth

Amendment.'"  *Zimmerman v. Burge*, 492 F. Supp.2d 170, 191 (E.D.N.Y. 2007) (citing

*Washington v. Schriver*, 255 F.3d 45, 56 (2d Cir. 2001)). *See Chambers v. Mississippi*,

410 U.S. at 294.  However, whether to grant a continuance, even one which would

impact on the defendant's right to call witnesses, is in the trial judge's discretion, and

"'[o]nly an unreasoning and arbitrary insistence upon expeditiousness in the face of a

justifiable request for delay violates the Constitution.'"  *Id.* (quoting *Drake v.

Portuondo*, 321 F.3d 338, 344 (2d Cir. 2003) (quoting *Morris v. Slappy*, 461 U.S. 1, 11

(1983)); *See Newton v. Keiser*, No. 18-CV-5253, 2019 WL 4736938, at *5 (S.D.N.Y.

May 1, 2019) (same); *Narrod v. Napoli*, 763 F. Supp. 2d 359, 381 (W.D.N.Y. 2011)

(same).  Whether the denial of a continuance is so arbitrary that it rises to the level of a

---

court also reminded counsel that petitioner had complimented counsel by stating that "[he was] the best lawyer in New York and Vermont." (T. 532).  The court also reminded counsel that petitioner had an outburst in open court when he told the judge that "God was going to punish me or punish somebody. . . . . He is the kind of person that [sic] doesn't have the filter and maybe says some things later he may regret . . . ." (T. at 537).  None of this conversation was related to witnesses or evidence, and the court was essentially telling counsel that he did not believe that petitioner would do anything violent. (T. 537-38). Thus, petitioner's presence at this colloquy would not have added anything meaningful and did not affect the fairness of the trial.

due process violation depends on the individual circumstances in the case, particularly

the explanation given by the court when the request was denied. *Id.* (citing *Ungar v.*

*Sarafite*, 376 U.S. 575, 589 (1964)).

> **B.    Application**

In this case, the Appellate Division's decision stated that in seeking an

adjournment of this type, the petitioner was required to show that he exercised "due

diligence" in attempting to secure the witnesses, that the testimony would be "material

and favorable" to the defendant, and that the "witness[es] [would] be available at a later

date." 148 A.D.3d at 1295 (citing inter alia *People v. Hartman*, 64 A.D.3d 1002, 1003

(3d Dep't 2009)) (alterations in original).

The Appellate Division found that petitioner's showing did not meet the

requirements for the standard listed above. *Id.*  The court found that petitioner made

requests for funds for investigative services in March and June of 2014.  Trial was

scheduled for July 15, 2014.  The March and June requests were denied because

petitioner failed to show, inter alia, "why the services were necessary." *Id.*  The

petitioner's July 2014 request for a continuance was made two weeks prior to the trial.

Counsel's request came the day after the County Court granted counsel $1,000.00 for

"investigative services." *Id.*  Petitioner's counsel argued that he sought to obtain three

witnesses who would testify to the petitioner's "state of mind." *Id.*  However, the

petitioner was unable to "provide any concrete information as to the witnesses'

whereabouts and the testimony he proposed to elicit would have incriminated two of

them, making it unlikely that they wished to be found." *Id.*  Although the trial judge

denied the continuance, he granted counsel another $500.00 for investigative services.

Based on the facts above, the Appellate Division held that the trial court properly denied the petitioner's request for a 45-day adjournment, made two weeks prior to trial. *Id.* The court found that petitioner had ample time to locate the witnesses prior to the July 2014 motion, so he failed to show "due diligence," but "[m]ore importantly, he failed to establish that the witnesses could be located and would be available to testify if the continuance were granted." *Id.* The Appellate Division's decision was not contrary to any Supreme Court precedent. The court's denial was not "unreasoning," nor was it "arbitrary," and the Appellate Division correctly found that there was no showing that further delay would result in the availability of witnesses, who did not wish to be found. In addition, the fact that the testimony that counsel proposed to elicit would have incriminated two of the witnesses further supports the court's finding that it was likely that these witnesses would not be found, nor would they be willing to testify.

A review of the July 11, 2014 hearing transcript supports the reasonableness of the Appellate Division's decision. (Hearing Transcript ("HT")) (Dkt. No. 23-4). The trial court's oral decision regarding counsel's request for continuance was initially based upon the written motion filed by counsel. The court named the three witnesses that defense counsel wished to locate for trial: Edward Johnson, Denise Harvey, and "Jane Doe, . . . because they don't know exactly . . . her identity . . . ." (HT at 17). The court stated that as of July 8, 2014, the petitioner's investigator reported that "none of these individuals could be found." (*Id.*) The court also pointed out that petitioner had a "series" of attorneys, none of whom had requested "this," and stated that it was "kind of late notice to ask for a continuance." (HT at 18). However, the court allowed further argument on the matter. (*Id.*)

Counsel stated that Mr. Johnson would testify that he placed money in petitioner's account, supporting petitioner's defense that he did not "knowingly commit the crimes charged." (*Id.*) Ms. Harvey would give "similar testimony." (HT at 19). In support of the continuance, counsel also argued that "[f]rom what I understand, . . . at least one of . . . [these] people has active warrants in New York State. These are people who do not necessarily want to be found, which makes it all the . . . harder." (*Id.*) Counsel stated that these individuals had multiple addresses, and they "bounce around a lot." (*Id.*) The court then authorized another $500.00 for investigative services," but also noted that "he does have another week," and that normally "two weeks would be enough time to find somebody, [to] get them in." (HT at 21).

After further discussion, the court stated that even if he gave the petitioner another 45 days, there were no guarantees that these witnesses would be found or that they would testify. (HT at 24). The court stated "[t]hat's the problem. They've got warrants out. They've flown the coop." (*Id.*) The prosecutor then stated that Mr. Johnson was "a potential co-conspirator on other charges with Mr. Durham out of the State of Vermont." (HT at 25). The prosecutor stated that Mr. Johnson had always been known to the defense, and that the prosecutor would object to calling him as a witness. (HT at 26). The prosecutor also argued that he would object to "Jane Doe's" proposed testimony because she could only testify as to hearsay: that petitioner "gave Mr. Johnson permission to use his bank account or deposit money." (HT at 26). The prosecutor argued various other bases for denying the continuance. (HT at 26-27).

Counsel was given the opportunity to respond to the prosecution's opposition. (HT at 28-29). The court ultimately denied the motion for a continuance, granted

24

counsel's request for extra funds, and noted that the defendant would have a week before trial started, but would also have another additional week because defense witnesses would not testify until after the prosecution's case. (HT at 31).  The court stated "[s]o there is still time to go out, try to find these people," even though the court still maintained that "just from the description I've heard, it seems like it's maybe simply impossible, no matter how much time is alloted for trying to find these people." (HT at 31).

The trial court's finding was quite reasoned, taking into account the length of time that the trial had already been delayed and the length of time that petitioner knew about these witnesses.  "[M]ore importantly," the trial court took into account the fact that these individuals were not likely to be found, nor would they be likely to testify, given that their testimony would tend to incriminate them, and one of the individuals was likely a co-conspirator in a similar crime in Vermont.  In *Morris v. Slappy*, the Supreme Court found no constitutional violation where the trial court denied a continuance to an attorney who was newly appointed to the case and had asked for more time to investigate and prepare. 461 U.S. at 11-12.

In *Drake v. Portuondo*, after noting that the right to confront and cross-examine witnesses was "essential to due process," the Second Circuit stated that "[h]ere however, the state court did not curtail cross-examination or exclude rebuttal evidence by the defense.  Drake's disadvantage flowed from a refusal to grant a continuance, which is a matter 'traditionally within the discretion of the trial judge.'" 321 F.3d at 344 (quoting *Ungar v. Sarafite*, 376 U.S. 575, 589 (1983)).  The court in *Drake* denied a two-week continuance so that the defendant could find an expert who could counter the

prosecution's "last minute" witness, a psychologist, who would testify about psychological profiling. 321 F.3d at 340, 342.

The Second Circuit stated that the Appellate Division in *Drake*, "presumably decided that the denial of [the motion for continuance] did not deprive Drake of his rights under the Sixth and Fourteenth Amendment.[9]  Drake identifies no Supreme Court authority that would command either the two-week continuance in a jury trial, or a new trial by reason of its denial." *Id.* at 344.  In this case, the trial judge was very specific in his reasons for denying the continuance, and the Appellate Division found that the trial court did not abuse its discretion in denying the extra time to counsel.  There is no Supreme Court precedent that would dictate otherwise, and this court finds that petitioner's continuance claim may be dismissed on the merits.

**WHEREFORE**, based on the findings above it is

**RECOMMENDED**, that the petition be **DENIED and DISMISSED**, and it is

**RECOMMENDED**, that a certificate of appealability be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. These objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing

---

[9] Petitioner relies upon *Singleton v. Lefkowitz*, 583 F.2d 618 (2d Cir. 1978) in which the court granted a petition for habeas corpus where the trial court denied the petitioner a two-week continuance to find a witness who the state had erroneously released.  The court specifically stated that "where the Government has contributed to the unavailability of the witness, the showing of favorable testimony that is required of the defendant is relaxed. 583 F.2d at 623.  Thus, *Singleton* is readily distinguishable from this petitioner's application.  In addition, as respondent points out, *Singleton* was a pre-AEDPA decision, and the AEDPA has altered the standard for granting a habeas corpus petition.

*Small v. Secretary of HHS*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72.

Dated: October 25, 2019

Hon. Andrew T. Baxter
U.S. Magistrate Judge